[No. 17369.   Department Two.   February 26, 1923.]

B. MARGARET SMITH, as Guardian etc., Plaintiff, ELLA M.
Swart et al., Interveners and Appellants, v.
ARTHUR E. SMITH et al., Respondents.[1]

TRUSTS (34)—DISPOSAL OF TRUST PROPERTY—SETTING ASIDE—
PERFORMANCE OF TRUST.   A deed by a mother to a son, in trust for
the benefit and support of herself and a daughter during their
lifetime, cannot be set aside, at the suit of heirs of the mother, on
the ground of a violation of the trust by the trustee's agreement
looking to the ultimate sale and conveyance of the property to third
persons, on the theory that the same was a diversion of the trust
funds, where such contract reserves all the lands and income sub-
ject to the obligations of the trust. and does not lessen the ability
of, but is a material aid to, the trustee in performing the trust.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered January 25, 1922, in
favor of the defendants, dismissing on the pleadings
an action to set aside a deed.   Affirmed.

Geo. B. Cole and John Wesley Dolby, for appellants.
C. L. Parker, for respondents Smith.
Griffin & Griffin, for respondents Mess.
Eugene C. Luccock, pro se.

PARKER, J.—This action was commenced in the su-
perior court for King county by Margaret Smith, as
the guardian of her feeble-minded sister, Hattie, and
her aged mother, Elizabeth, seeking the setting aside
of a deed of conveyance made by the mother to the
defendant son Arthur and his wife.   Before the dis-
position of the case in the superior court, the con-
troversy became one between the intervener plaintiffs,
Ella, Ida, Lucy and Margaret, sisters of Arthur, claim-

[1]Reported in 213 Pac. 1.

ing as her heirs on the one side, and the defendants, Arthur and his wife and their contemplated grantees, on the other side; the mother having died and Margaret having been, by order of court, removed and discharged as guardian of the sister Hattie. The case comes to us upon the pleadings alone, by an appeal prosecuted by the interveners from a judgment of dismissal rendered against them upon the pleadings. The allegations of the interveners' complaint in intervention, by its reference to and adoption of admitted facts disclosed by the original pleadings, and the attitude of their counsel towards the defendants' motion for dismissal, in that, upon the hearing of that motion, they asked the trial court to render final judgment upon the pleadings in their favor, amounted to a submission, by all of the interested parties, of the cause upon the pleadings for final disposition by the court. This calls for the searching of the entire record, in which, we think, conceded facts are to be found controlling of the claimed rights of the parties. The pleadings are very voluminous, and to analyze them in detail here would be of no material service to anyone. The undisputed and controlling facts so appearing, as we view them, may be summarized as follows:

Elizabeth Smith was left a widow by the death of her husband in September, 1904. There had been born to them the six children, above named. She then became possessed of the land here in controversy, together with other property, as her separate property. She was then 68 years old, and desiring to make disposition of her property to her children, with a view of an equitable division thereof among them, and of being freed from further care of her property, and at the same time make provision for her own support for the remainder of her life, and also make provision for

the support of her feeble-minded daughter Hattie for the remainder of her (Hattie's) life, she, among other conveyances, made conveyance of the land here in controversy to her son Arthur and his wife, by deed absolute in form, on November 9, 1904. The principal consideration for that conveyance was at the same time evidenced by a declaration of trust, signed by Arthur and his wife, which declaration of trust, in so far as we need here notice its terms, reads as follows:

"This indenture, made this 9th day of November, in the year of our Lord one thousand nine hundred and four, between Arthur E. Smith and Mary E. Smith, his wife, of Orillia, King County, State of Washington, parties of the first part, and Elizabeth S. Smith (widow of Rollin C. Smith, deceased, and mother of the said Arthur E. Smith) of the same place, party of the second part:

"Witnesseth, That, whereas, the party of the second part has this day made, executed, and delivered, to the parties of the first part her certain indenture of deed, whereby the party of the second part has conveyed to the parties of the first part, in fee, absolutely the following described lots, tracts, or parcels of land, lying and being situated in King County, State of Washington, particularly bounded and described as follows:

(Description of property.)

"Nevertheless the parties of the first part hereby declare that they accepted said deed and take the title to said premises described therein upon the following express terms and conditions, in trust, as follows:

"First—The parties hereto have agreed, and by these presents do agree that the parties of the first part have a long term lease on said described premises, which lease shall be, and from this time henceforth is, abrogated, annulled, and made void, and the parties of the first part take, and keep, and use said premises as their own, in fee simple, under said deed of conveyance.

"Second—The parties of the first part expressly agree. to pay all taxes, of every name, nature and description, to be levied or assessed against, or to become due upon, the said premises, and each and every part henceforth.

"Third—That parties of the first part further expressly agree to pay the interest on a certain note for Nine Hundred ($900.00) Dollars, executed by Rollin C. Smith and the party of the second part, during the lifetime of the said Rollin C. Smith, and delivered to Frank Hill, and secured by mortgage on said real premises, and to pay said interest promptly as the same becomes due, until the parties of the first part shall pay the principal of said note, according to the terms of an agreement by which the parties of the first part are obligated to pay the principal of said note on or before its maturity.

"Fourth—The said party of the second part shall have the use of her house, on said described premises during the remainder of her life together with sufficient ground surrounding the same for yard and garden, together with her fuel to be provided by the parties of the first part, from the timber growing upon said premises.

"Fifth—The parties of the first part shall pay to the party of the second part, for her maintenance, the sum of Thirty-Five ($35.00) Dollars per month, lawful money of the United States, monthly, each calendar month hereafter as long as the said party of the second part shall live, beginning with the month of December, 1904. But upon the death of the party of the second part, the said payments shall cease, and no payment shall be made to the executors or administrators of the party of the second part.

"Sixth—Upon the death of the party of the second part, the parties of the first part expressly agree that they, and each of them, and the survivor of them, will take, and care for, and provide for, Hattie Smith, a feeble-minded person, daughter of the party of the second part, and sister of the said Arthur E. Smith, during the remainder of her lifetime, in a simple plain manner, as she has during her entire life been provided

for by her father and mother, and that the parties of
the first part will furnish said Hattie Smith, with suit-
able plain, comfortable clothing, and with suitable,
plain, nourishing food, and such shelter and accommo-
dations as they have themselves, and with necessary
medicine, and medical attendance in case of sickness,
and at her death to provide for her a decent burial, ac-
cording to the station in life of the respective parties
hereto. Then all the terms, and conditions, and cov-
enants shall be deemed to be complied with and said
trust shall be deemed to be completed and thereby
terminated.

"Seventh—In case of the failure of the parties of
the first part to keep and perform each and every
of the covenants and agreements herein mentioned, to
be kept and performed by them, then the said party of
the second part, her executors, or administrators may
re-enter, and take possession of said premises, and
each and every part thereof, and remove the parties
of the first part and all persons claiming by, through
or under them or either of them, and in case of any
default after the death of the party of the second part,
then the judge of the probate division of the superior
court of King county may appoint some person to
carry out the provisions of this agreement, and to do
equity between all the parties."

Arthur and his wife have, at all times since so ac-
quiring the land, remained in possession thereof, ex-
cept as hereinafter stated. The principal ground upon
which Margaret, as guardian of her mother and sister,
in the beginning of the action, rested her claimed right
to a decree in their behalf setting aside the deed of the
mother to Arthur, and upon which she and her three
sisters, Ella, Ida and Lucy, individually as interveners
and as heirs of their mother, now rest their claimed
right to such a decree, is the making of a contract by
Arthur and his wife with Frederick and Walter Mess
on July 21, 1917, looking to the ultimate sale and con-
veyance of a large portion of the land to them by Ar-

thur and his wife. That contract, in so far as we find
it necessary to here notice its terms, reads as follows:

"This agreement made and entered into by and be-
tween Arthur E. Smith and Mary E. Smith, his wife,
of Orillia, Washington, parties of the first part, and
Frederick J. Mess and Walter Mess of the same place,
parties of the second part,

"Witnesseth: That the parties of the first part
agree to sell and convey to the parties of the second
part, and the parties of the second part agree to pur-
chase of and from the parties of the first part all of
those certain described tracts and parcels of land, de-
scribed as follows, to-wit:

(Description of property.)

"The purchase price of said land, together with all
the rights and privileges herein contained shall be and
is the sum of $19,348, of which said amount the sum
of $936 has heretofore been paid, the receipt whereof
is hereby acknowledged; and the further sum of $5,312
shall be paid in cash upon the signing and delivery of
this agreement. The remainder of the purchase price
shall be paid as follows: $5,000 within 60 days after
the death of both Elizabeth Smith, mother of said
Arthur E. Smith, and Hattie Smith, sister of said Ar-
thur E. Smith, and the remaining sum of $8,000 may
either be then paid in cash or by giving a promissory
note therefor, payable on or before 5 years from its
date, secured by a mortgage upon the premises pur-
chased, all deferred payments, whether upon this
agreement or evidenced by promissory note, as herein
provided, shall bear interest at the rate of 6% per an-
num, payable semi-annually on the 1st day of January
and the 1st day of July of each year at any bank in
Seattle designated by the parties of the first part.

"The parties of the first part shall execute and ac-
knowledge a Deed of Conveyance to the property de-
scribed, and the same shall be placed in escrow with
some disinterested person or bank, to be delivered to
the parties of the second part when the said sum of
$5,000 shall have been paid, and said promissory note

and mortgage securing the same shall have been signed, executed and delivered, or whenever the purchase price shall have been fully paid at the option of the parties of the second part.

"The parties of the second part shall have the exclusive use and possession of said premises and use of the same during the time this agreement shall be in force and effect.

"The parties of the first part agree to pay monthly to said Elizabeth S. Smith, mother of Arthur E. Smith, the sum of $35.00 each month as long as she shall live, and agree thereafter to support, keep and clothe and provide for said Hattie Smith as long as she shall live, in all respects as set forth, agreed and specified in a certain Declaration of Trust, made and signed by the parties of the first part, dated the 9th day of November, A. D. 1904. . .

"Should the parties of the first part fail to make any and all payments and provisions to or for the benefit of said Elizabeth S. Smith during her entire lifetime, or fail thereafter to keep, maintain, support and clothe said Hattie Smith during the remainder of her life, or fail in any particular to keep and perform any or all things stated and agreed to be done, paid or performed in said Declaration of Trust, made by said parties of the first part, the parties of the second part may make any and all such payment or payments and may thereafter contract for or otherwise provide for the support, keeping, clothing and maintenance of said Hattie Smith, in such manner as they shall be ordered or directed by the Probate Court having jurisdiction, or as they may be ordered, authorized or directed to do by any court of competent jurisdiction, and any and all payments or disbursements so made, if any, shall be deducted from any interest payment or payments, or any of them thereafter to become due and if such interest payment or payments shall be insufficient, then from the principal of the deferred payments thereafter to become due under this agreement, and interest shall cease immediately upon all amounts of principal, if any, so paid.

"The parties of the second part agree to pay all taxes hereafter to become due against the property herein agreed to be conveyed before the same shall become delinquent. . .

"Should the parties of the second part fail to make any payments of principal or interest promptly when the same shall become due, the parties of the first part, provided they shall have kept and performed their agreements herein agreed to be performed to such date, shall upon 30 days written notice have the right to cancel this agreement and to forfeit the same."

We quote the language of the trust declaration and that contract to this extent to render it plain just what the trust obligations of Arthur and his wife were and are, and to what extent the land and the income therefrom, under the contract, were thereby pledged to secure the fulfillment of those obligations. Frederick and Walter Mess went into possession of the land under that contract, and, we may assume, they have, since its making, remained in such possession and in all things complied with its terms.

On April 26, 1917, Margaret was, by the superior court for King county, formally appointed guardian of the persons and estates of the mother, Elizabeth, and the feeble-minded daughter and sister, Hattie. The mother was then 81 years old. Prior to that time it had evidently been thought by all of the children not at all necessary that anyone should be formally appointed guardian of either the mother or the sister Hattie. Thereafter, in October, 1919, Margaret, as the guardian of her mother and sister Hattie, commenced this action. Thereafter, on December 11, 1920, the mother died. Thereafter, Margaret was, by the court, removed and discharged as guardian of Hattie. Thereafter, Margaret, together with her sisters Ella, Ida and Lucy, in their individual rights as heirs of the

mother, intervened in this action, seeking to have the
conveyance from the mother to Arthur and his wife
set aside on substantially the same grounds as the
claims of Margaret were rested upon in her commence-
ment of the action as guardian of the mother and sis-
ter Hattie.   Thereafter, demurrers of the defendants
to the complaint in intervention were, by the court,
sustained; and the time for amendment having expired
and the interveners not pleading further, the defend-
ants interposed their motion to dismiss the action.
That motion, as originally made, seems to have been
rested principally upon the ground that the interveners
had no standing in this action and no right to inter-
vene therein, though upon the argument of the motion
counsel for both sides seem to have proceeded upon
the theory that it was a motion for judgment upon
the merits on the pleadings; counsel for interveners,
evidently so regarding it, asked for judgment in their
favor upon the merits on the pleadings.   The cause
being so submitted to the court, judgment of dismissal
in favor of the defendants was rendered on January
25, 1922, from which the interveners have appealed,
as already noticed.

The principal and only contention here made in be-
half of the interveners, which we deem necessary to
seriously consider, is that the contract entered into by
Arthur and his wife with Frederick and Walter Mess,
looking to the ultimate sale and conveyance of the land
to the latter, was such a flagrant violation of the terms
of the trust obligations resting upon Arthur and his
wife as to call for a decree setting aside the convey-
ance of the mother to Arthur and his wife and the for-
feiture of all their rights in and to all of the land de-
scribed in that conveyance.   The argument is in sub-
stance that that contract effected such a diversion of

the trust property from the purposes of the trust as to cause the consideration for which the mother conveyed the land to Arthur and his wife to entirely fail. Counsel for appellants cite in support of this contention the decisions of this court rendered in *Payette v. Ferrier,* 20 Wash. 479, 55 Pac. 629; *Payette v. Ferrier,* 31 Wash. 43, 71 Pac. 546; *Ford v. Kimble,* 41 Wash. 573, 84 Pac. 414; *Gustin v. Crockett,* 51 Wash. 67, 97 Pac. 1091; and *Gardner v. Frederick,* 96 Wash. 324, 165 Pac. 85.

A critical examination of those cases, we think, will clearly show that they involved conditions under which conveyances of the trust property by the trustee, if not set aside, would have the effect of removing the property beyond the reach of the trust, or of materially lessening or wholly impairing the ability of the trustee to carry out the terms of the trust, or involved the death of the trustee upon whom the obligation of support of the beneficiary rested, before the death of the beneficiary. In each of those cases there was involved either the entire general support to be furnished to the beneficiary by the trustee, or the use of the property itself by the beneficiary, of which he was deprived by the trustee. Such is not this case. As to the trust obligations resting upon Arthur and his wife to the mother, they were only to pay the taxes, to pay the $900 note, to allow the mother to occupy a house on a small portion of the land surrounding it, to furnish the mother fuel at that place, and to pay the mother $35 per month during her lifetime, for a failure of which in some substantial degree we may concede that the mother would be entitled to have the conveyance made by her set aside. As to the obligations resting upon Arthur and his wife to the feeble-minded sister, Hattie, they were only to furnish her support in the

plain manner indicated, during the remainder of her lifetime after, not before, the mother's death, for a failure of which the contract expressly specifies a remedy in the probate division of the superior court for King county, to the end that "equity between all parties," manifestly between Arthur and his wife and the sister Hattie, may be done in the premises, they then being the only remaining parties to the contract. Such remedy might consist of the court taking over and administering the trust in the interest of Hattie during her lifetime, but not in setting aside the deed and forfeiture of all of the rights of Arthur and his wife in the land, except possibly by the sale of the land to satisfy Hattie's necessary wants. As to the payment of the taxes and the $900 note, it is not claimed that there has been any default whatever on the part of Arthur and his wife in the satisfaction of those obligations.

Now as to the contract between Arthur and his wife with Frederick and Walter Mess, we think it needs nothing more than a cursory examination of its terms, above quoted, to demonstrate that it expressly preserves all the land described therein and all the income therefrom, subject to the satisfaction of all the obligations of Arthur and his wife to the mother and the sister Hattie. It seems to us that the above quoted provisions of that contract, read in the light of the provisions of the declaration of trust imposing the trust obligations upon Arthur and his wife to the mother and sister Hattie, leave little that can be said in support of a contention that that contract, in the slightest degree, removes any of the trust property or its income under the contract from the burdens of the trust, or lessens the ability of Arthur and his wife, as trustees, to perform all of the obligations imposed upon them

by the terms of the trust. Indeed, it seems to us that there is more room for assuming that that contract becomes a material aid to Arthur and his wife in performing their trust obligations to the mother and the sister Hattie, if it be fulfilled on the part of Frederick and Walter Mess, since the title to the land is not to pass to them until after the death of both the mother and Hattie, and in the meantime Frederick and Walter Mess will be required to pay interest in such an amount as will apparently be sufficient to enable Arthur and his wife to do all that the trust obligation obligates them to do, and still have the land itself pledged to that end. We conclude that the contract made by Arthur and his wife with Frederick and Walter Mess does not warrant the setting aside of the conveyance made by the mother to Arthur and his wife; because, as we view it, the making of that contract was in no sense a violation or impairment of the trust obligations imposed upon Arthur and his wife by the declaration of trust executed in consideration of the conveyance made to them by the mother.

Some other contentions are made in behalf of appellants, but they seem to us so clearly without merit as to not call for our further discussion of the case. What we have said renders it unnecessary to discuss the question of the right of the interveners to be heard in this case; that is, as to whether or not they have the right to become parties to this action in any event.

The judgment of dismissal is affirmed.

MAIN, C. J., FULLERTON, and TOLMAN, JJ., concur.